**FILED**

**March 17, 2022**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

*In re* **R.G.**

**No. 20-0971** (Kanawha County 20-AF-7)

# MEMORANDUM DECISION

Petitioner K.G., by counsel Michael M. Cary, appeals the Circuit Court of Kanawha County's November 4, 2020, order denying her motion to reconsider the order denying contact between petitioner and R.G.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Patrick Morrisey and William P. Jones, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Elizabeth G. Kavitz, filed a response on behalf of R.G. also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in denying her motion to reconsider and prohibiting contact between petitioner and R.G.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

This case centers around R.G., an elderly individual who was deemed incapacitated by a licensed physician as a result of cognitive defects due to dementia. R.G. was placed at Valley Center, a long-term care facility that provides nursing care and assistance with daily living. After R.G. was placed at Valley Center, personnel contacted petitioner, R.G.'s sister, in an effort to apply for Medicaid assistance to help R.G. pay for the cost of care at Valley Center. Petitioner was not responsive to Valley Center's request for assistance and, as such, Valley Center filed a petition for the appointment of a guardian and/or conservator. The circuit court appointed R.G. a guardian on February 10, 2020.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

1

During the guardian's investigation, she discovered that R.G.'s bank account also listed petitioner on the account, and the bank statements indicated many withdrawals from petitioner. These withdrawals totaled more than $15,000, and petitioner was unable to account for the spending or explain how the money was used for R.G.'s benefit while he was living at Valley Center. On March 20, 2020, the guardian filed a Petition for a Temporary Exploitation Protective Order on behalf of R.G. That same day, the magistrate court granted the protective order, finding that petitioner was the victim of financial exploitation and ordered petitioner to submit a written accounting of the disposition of R.G.'s income or other resources to the circuit court within twenty days. The magistrate court also prohibited petitioner from visiting R.G. at Valley Center. Thereafter, the circuit court entered a scheduling order in the matter.

The circuit court held a hearing on May 14, 2020, for the purpose of reviewing the temporary protective order issued by the magistrate court. Petitioner failed to appear, and seemingly failed to file a written accounting of R.G.'s financial income and resources as previously ordered. The administrator of Valley Center testified to R.G.'s health and stated that petitioner failed to timely assist with applying for Medicaid benefits for R.G., resulting in Valley Center filing a guardianship/conservatorship action on R.G.'s behalf. The administrator testified that petitioner ultimately provided bank statements showing deposits of funds attributable to R.G.'s income but could not account for any withdrawals made from R.G.'s account and never provided any documentation showing that the withdrawn funds were used for R.G.'s benefit. The administrator noted the withdrawals totaled over $15,000. Following this testimony, the guardian moved the circuit court for entry of a permanent protective order against petitioner. The guardian further requested that petitioner be ordered to provide accounting and receipts, that R.G.'s accounts be frozen, and that the Kanawha County Sherriff be appointed as conservator for R.G., among other things.

After hearing testimony, the circuit court found that R.G. suffered from dementia and was a protected person due to his age and condition. The circuit court further found that R.G.'s income was directly deposited into accounts held jointly with petitioner, that petitioner failed to assist Valley Center in obtaining Medicaid assistance for petitioner, and that she failed to account for the withdrawals made from the accounts. Ultimately, the circuit court found that petitioner "committed financial exploitation by misappropriation of the funds of [R.G.], a protected person." Accordingly, the circuit court entered a permanent protection order against petitioner and further ordered that she have no contact with R.G. The circuit court directed petitioner to provide an accounting and receipts for all withdrawals from R.G.'s accounts within thirty days. The circuit court memorialized its findings by order entered on May 22, 2020.

In October of 2020, petitioner filed a "motion to reconsider to allow contact" with R.G. Petitioner argued that she and R.G. were biological siblings who had a significant emotional and psychological bond and requested that she be permitted to visit R.G. "inasmuch she will no longer be permitted to make any financial, medical, or legal decisions on his behalf." By order entered on November 4, 2020, the circuit court denied petitioner's motion to reconsider "for reasons apparent upon the record."

In Syllabus Point one of *In Re Robinette*, 218 W.Va. 186, 624 S.E.2d 533 (2005), we set forth the applicable standard of review:

When this Court reviews challenges to the findings and conclusions of the circuit court, a two-prong deferential standard of review is applied. We review the final order and the ultimate disposition under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard.

(quotations and citations omitted). We further note that "[a] motion to vacate a judgment made pursuant to Rule 60(b), W.Va. R.C.P., is addressed to the sound discretion of the court and the court's ruling on such motion will not be disturbed on appeal unless there is a showing of an abuse of such discretion." Syllabus Point 4, *Vanderpool v. Hunt*, 241 W. Va. 254, 823 S.E.2d 526 (2019) (citation omitted).[2]

On appeal, petitioner argues that the circuit court erred in denying her motion to reconsider and in prohibiting contact between petitioner and R.G. According to petitioner, adequate protections are in place to ensure that R.G.'s financial interests are protected, and the no-contact provision is overly punitive in nature. Petitioner contends that the no-contact order does not serve R.G.'s best interests "and seemingly is a life sentence for the Petitioner." Petitioner argues that the circuit court did not consider the life-long bond between petitioner and R.G. or petitioner's many efforts to show love to R.G. by cooking him meals, buying him things, and visiting him for holidays. Petitioner claims that she provides emotional and psychological support to R.G. and that she has a "profound effect on his well-being." Petitioner acknowledges that the restrictions to R.G.'s finances are appropriate; however, she argues that the circuit court "should have allowed for the preservation of the sibling bond to continue."

Petitioner fails to demonstrate that the circuit court abused its discretion in prohibiting contact with R.G. Below, petitioner failed to provide documentation regarding R.G.'s accounts to either Valley Center or the guardian and failed to provide any accounting for the withdrawals made from R.G.'s account. Petitioner never appeared during the proceedings below and never presented any evidence in her defense. The circuit court found that petitioner financially exploited R.G., entered a permanent protective order against her, and ordered her to provide an accounting of

---

[2]In filing her "motion to reconsider," petitioner failed to indicate under which rule she was filing her motion. According to Syllabus Point two of *Powderidge Unit Owners Ass'n v. Highland Properties, Ltd.*, 196 W. Va. 692, 474 S.E.2d 872 (1996),

[w]hen a party filing a motion for reconsideration does not indicate under which West Virginia Rule of Civil Procedure it is filing the motion, the motion will be considered to be either a Rule 59(e) motion to alter or amend a judgment or a Rule 60(b) motion for relief from a judgment order. If the motion is filed within ten days of the circuit court's entry of judgment, the motion is treated as a motion to alter or amend under Rule 59(e). If the motion is filed outside the ten-day limit, it can only be addressed under Rule 60(b).

Here, petitioner's motion was filed outside the ten-day-limit and will be addressed as having been filed under Rule 60(b).

3

R.G.'s accounts. To date, petitioner has not provided an accounting of the withdrawals made from R.G.'s account. Given R.G.'s designation as incapacitated and a protected person, coupled with petitioner's financial exploitation of him, the circuit court prohibited continued contact between petitioner and R.G. While petitioner argues that she and R.G. shared a strong bond, petitioner fails to cite to the record to demonstrate that she established the existence of a strong bond, nor does she cite to any authority in support of her argument that the circuit court should make reasonable efforts to preserve an adult sibling relationship. To the contrary, Rule 21 of the West Virginia Rules of Practice and Procedure for Financial Exploitation Proceedings provides that a permanent protective order may "grant any . . . relief the court deems appropriate." Given the record before us, we cannot find that the circuit court abused its discretion in prohibiting further contact between petitioner and R.G. Petitioner is entitled to no relief.

For the foregoing reasons, we find no error in the decision of the circuit court, and its November 4, 2020, order is hereby affirmed.

Affirmed.

**ISSUED**: March 17, 2022

**CONCURRED IN BY**:

Chief Justice John A. Hutchison
Justice William R. Wooton
Justice Alan D. Moats sitting by temporary assignment

**DISSENTING:**

Justice Elizabeth D. Walker
Justice Tim Armstead

Justice Walker and Justice Armstead dissenting and writing separately.

The majority affirms the circuit court's order without analyzing the controlling statutes. We dissent for two reasons. First, we would schedule this case for argument under Rule 20 of the West Virginia Rules of Appellate Procedure to resolve an apparent conflict in West Virginia Code §§ 55-7J-1 through -6 (2019), which governs financial exploitation of elderly persons. Second, either way we resolve the conflict, the circuit court exceeded its statutory authority by imposing the no-contact condition in its financial exploitation protective order.

4

West Virginia Code § 55-7J-1provides, in relevant part:

> (e) . . . . After a hearing, the circuit court may issue a permanent protective order containing *any relief* the circuit court determines *necessary to protect the alleged victim* if the court finds by a preponderance of the evidence that
>
>> (1) The respondent has committed an act against the victim that constitutes financial exploitation; and
>>
>> (2) There is reasonable cause to believe continued financial exploitation will occur unless relief is granted . . . .[1]

But West Virginia Code § 55-7J-3 lists "[c]ourt authorized remedies" as follows:

> (a) In an action brought against a person under this article upon a finding that an elderly person, protected person or incapacitated adult has been financially exploited, the court may order:
>
>> (1) The return of property or assets improperly obtained, controlled or used; and
>>
>> (2) An award of actual damages to the person who brought the action for any damages incurred or for the value of the property or assets lost as a result of the violation or violations of this article.
>
> (b) In addition to the remedies provided in subsection (a) of this section, a court may order the following:
>
>> (1) For violations committed by a person who is not in a position of trust and confidence, payment of two times the amount of damages incurred or value of property or assets lost; and
>>
>> (2) For violations committed by a person in a position of trust and confidence, payment of treble damages.

It is not clear whether the list of authorized remedies limits circuit courts' issuance of "any relief . . . necessary." If it does, the circuit court exceeded its authority because the Legislature did not include a no-contact order as an authorized remedy.

But if the list of authorized remedies does not limit the relief circuit courts can provide under § 55-7J-1(e), we find the no-contact condition overly restrictive and unnecessary to remedy R.G.'s financial exploitation. The circuit court found only that the petitioner impermissibly

---

[1]Emphasis added.

5

withdrew money from R.G.'s accounts and failed to timely respond to the nursing home's requests, appear for the circuit court hearing, or account for the withdrawals. The improper withdrawals are the only facts on which the finding of financial exploitation is based, and barring the petitioner's access to the accounts or any of R.G.'s other assets were the only conditions necessary to prevent it from happening again. The circuit court made no findings that the petitioner would continue to financially exploit R.G. without the no-contact condition, so its findings do not satisfy § 55-7J-1(e)(2).

The majority cites Rule 21(a)(6) of the West Virginia Rules of Practice and Procedure for Financial Exploitation Civil Proceedings for the proposition that it authorized the circuit court to impose the no-contact condition since the rule says circuit courts may "grant . . . any relief the court deems appropriate." But if § 55-7J-3 limited the circuit court to the list of authorized remedies, the list needed to include a no-contact condition for it to be appropriate. And if not limited by the list of remedies, under § 55-7J-19(e), the relief needed to be necessary to be appropriate. So the Rule does not give circuit courts unfettered discretion as the majority implies.

This case should have been placed on the argument docket for this Court to determine whether the statute authorizes no-contact conditions in permanent financial exploitation protective orders, and, if so, whether the circuit court acted within its discretion by deeming it necessary in this case.