# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

IN RE: J.K.,

**FILED**
**April 22, 2024**

ASHLEY N. DEEM, DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**No. 23-ICA-272**     (Cir. Ct. Boone Cnty. No. CC-03-2022-AF-1)

## MEMORANDUM DECISION

Petitioner James H. appeals the April 11, 2023, "Final Permanent Financial Exploitation Protective Order" entered by the Circuit Court of Boone County, which found that James H. financially exploited J.K.[1] J.K. filed a timely response in support of the circuit court's order.[2] James H. did not file a reply.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2022). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On November 10, 2022, J.K. filed a petition for a temporary financial exploitation protective order, stating that she was over the age of sixty-five, lived in Boone County, and was being financially exploited by her son, James H. She alleged that James H. had exerted undue influence to obtain equal ownership of real estate she owned with her now incapacitated spouse, K.H., without her knowledge or understanding. She claimed James H. had moved into her home and had made it unsafe and unlivable such that she was forced to move out. She also alleged that James H. had misappropriated at least $5,683.88 of her Social Security income.

The Magistrate Court of Boone County found clear and convincing evidence to grant the temporary financial exploitation protective order that ordered James H. to refrain from committing acts of abandonment, abuse, neglect, or financial exploitation against J.K., to refrain from taking any action that results in diminution of her assets, and to submit, in writing, an accounting of the disposition of J.K.'s income or other resources to the circuit court within twenty days. James H. was also ordered to stay at least one mile away from

---

[1] We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e).

[2] James H. is self-represented. J.K. is represented by Jennifer Singletary, Esq.

J.K.'s residential property and the long-term care facility where she now lived and to have no contact with her.

Despite the temporary protective order, James H. continued to reside in J.K.'s home and "lay waste" to her property and maintained conditions in her home such that it was not safe for J.K. to enter. On December 8, 2022, James H. was notified that an ongoing Adult Protective Services' ("APS") investigation concluded that allegations of his abuse and neglect of both of his parents were substantiated. He was further notified that the conclusions of the APS investigation were being forwarded to the Boone County Prosecutor. During the APS investigation, K.H. was removed from the home and placed into long-term care by the West Virginia Department of Health and Human Resources for his safety. J.K. was provided alternate housing in a nursing home privately paid for by another family member. APS contacted Legal Aid of West Virginia to request that they investigate for potential financial exploitation of the couple by James H., which ultimately resulted in the underlying legal action.

The case was transferred to circuit court, which set the matter for hearing on January 5, 2023. J.K. moved the court for a continuance due to James H.'s evasion of service, first by attempted personal service by law enforcement, and then service by certified mail. The circuit court granted the continuance and instructed the circuit clerk to serve James H. by certified mail, restricted delivery, return receipt requested. That service was also unsuccessful, so the clerk served James H. by publication. The matter was set for hearing on April 6, 2023. J.K. appeared in person and through her counsel. James H., called thrice by the court, failed to appear.

The circuit court took notice of the petition and found by a preponderance of the evidence that James H. committed an act against J.K. that constitutes financial exploitation and that there was reasonable cause to believe continued financial exploitation would occur unless relief was granted. Counsel for J.K. introduced evidence that the APS investigation had concluded that there were substantiated allegations of abuse and neglect of J.K. and K.H. by James H. Counsel also submitted into evidence bank statements from Whitesville State Bank demonstrating that James H. obtained J.K.'s social security income in the amount of $4,683.88 from her joint checking account, causing the account to overdraft and incur fees. James H.'s signature appeared on every cash withdrawal and numerous personal checks he endorsed, many made out to "Cash." The circuit court also heard evidence that James H. allegedly told his parents that he had come into a windfall of cash with which he intended to pay them back for a 2011 loan they made to him, and lured them to a lawyer's office to "sign the papers" in order to pay them some amount on the loan. Instead, on August 5, 2021, he took his parents to a Boone County law office to sign a deed that had been prepared that added him as a joint owner of their home with a right of survivorship.

The circuit court concluded that the preponderance of the evidence demonstrated that James H. used his relationship as J.K.'s son to unduly influence her, obtain joint

tenancy of her estate, misappropriate her funds, and conduct himself such that APS reached a conclusion of substantiated abuse and/or neglect, rendering her own home unsafe and uninhabitable, which conduct constitutes financial exploitation as defined in West Virginia Code § 55-7J-1 (2021).

The circuit court's order affirmed the temporary financial exploitation protective order, granted a final permanent financial exploitation protective order incorporating the terms and conditions of the temporary order, appointed J.K.'s attorney as a special commissioner for the sole purpose of making a Special Warranty Deed granting and conveying all right, title and interest of James H. in and to the real estate, thus restoring J.K. to all right, title and interest she had prior to the August 5, 2021, Deed, and ordered restitution in the amount of $5,683.88 and court costs and fees in the amount of $70.00. This appeal followed.

At the outset, we find that James H.'s brief does not clearly state any assignments of error, nor does it comply with the requirements of Rule 10 of the West Virginia Rules of Appellate Procedure in terms of formatting or the organization of the brief. Rather, it consists largely of stream-of-conscious self-serving statements regarding his disagreement with the factual basis for and the outcome of the underlying case. As we have observed previously, we cannot consider indecipherable arguments made in appellate briefs. *See Vogt v. Macy's*, 22-ICA-162, 2023 WL 4027501, at *4 (W. Va. Ct. App. June 15, 2023) (memorandum decision) (citing *State v. Lilly*, 194 W. Va. 595, 605 n. 16, 461 S.E.2d 101, 111 n. 16 (1995) (explaining that appellate courts frequently refuse to address undeveloped, perfunctory, or cursory arguments on appeal)). However, as has been our past practice, we will be mindful that "[w]hen a litigant chooses to represent himself, it is the duty of the [court] to insure fairness, allowing reasonable accommodations for the pro se litigant so long as no harm is done an adverse party[.]" *Bego v. Bego*, 177 W. Va. 74, 76, 350 S.E.2d 701, 703 (1986). We will address only the issues that we can reasonably determine comprise the crux of James H.'s appeal. Upon review, we conclude that those issues are that the circuit court erred by (1) conducting the hearing on the permanent order without giving James H. notice, and (2) by granting the permanent order based on an erroneous assessment of the evidence.

We apply the same standard of review as our state's highest court:

When this Court reviews challenges to the findings and conclusions of the circuit court, a two-prong deferential standard of review is applied. We review the final order and the ultimate disposition under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard.

Syl. Pt. 1, *In Re Robinette*, 218 W. Va. 186, 624 S.E.2d 533 (2005).

The first issue presented in James H.'s appeal may be found in his somewhat varied but repeated statements that he was not aware of the circuit court's hearing on the financial exploitation protective order. We are not persuaded by this argument, no matter how it was phrased. The order on appeal describes the lengths that J.K. and the circuit court went to provide James H. with notice of the hearing all while James H. continually evaded the same. First, J.K. moved for a continuance of the January 5, 2023, hearing date because James H. evaded attempted personal service by Boone County law enforcement and service by certified mail. The circuit court granted the continuance and instructed the circuit clerk to serve James H. by certified mail, restricted delivery, and return receipt requested pursuant to the West Virginia Rules of Civil Procedure and the West Virginia Rules of Practice and Procedure for Financial Exploitation Civil Proceedings. After that method of service also proved unsuccessful, the circuit clerk then served James H. via publication in the *Coal Valley News* on March 8, 2023. The matter was finally heard by the circuit court on April 6, 2023. Prior to the start of the hearing, James H. was called three times by the court but failed to appear. In total, the circuit court took four months, three weeks, and six days to serve James H. by every manner available under Rule 13(a) of the Rules of Practice and Procedure for Financial Exploitation Civil Proceedings. Accordingly, we find no error in the circuit court's provision of notice to James H. in this matter.

As to the second assignment of error, it appears that James H. attempts to assert that the circuit court erred in its assessment of the evidence against him. Multiple pages of his handwritten brief contain what appears to be an accounting of monies James H. claims he gave to his parents or spent on improvements to their home, such as "$50,000 remodeling" the house, "$7,000 furniture", "I paid his truck off $10,000", and "I gave them $9,000 plus $1,000 cash". The brief also states, "I have all papers what it cost", however, no documents or other evidence support James H.'s statements. To the contrary, the uncontroverted evidence adduced at the circuit court's hearing demonstrates that James H. only withdrew money from his mother's bank account, never made any deposits, and that there were credible, substantiated allegations of abuse and neglect by James H. against J.K. and K.H. discovered by the APS investigation. There is no support anywhere in the record for any of James H.'s assertions that J.K. fabricated the claims of his abuse or that he actually spent great sums of money enriching his parents, and no basis whatsoever to find that the factual findings by the circuit court in this regard were clearly erroneous.

Upon review, we cannot say that the circuit court abused its discretion in its determination to make permanent the financial exploitation protective order or in its decision to grant relief to J.K. We find no merit in James H.'s assertions or any other error sufficient to disturb the circuit court's ruling. Accordingly, we affirm the circuit court's "Final Permanent Financial Exploitation Protective Order."

Affirmed.

**ISSUED:**  April 22, 2024

**CONCURRED IN BY:**

Chief Judge Thomas E. Scarr
Judge Charles O. Lorensen
Judge Daniel W. Greear